# Illinois Official Reports

## Appellate Court

---

> ### *Studer v. Central Illinois Scale Co.*, 2021 IL App (3d) 200277

---

| | |
|---|---|
| Appellate Court Caption | RODRICK S. STUDER, Plaintiff-Appellant, v. CENTRAL ILLINOIS SCALE COMPANY, Defendant-Appellee. |
| District & No. | Third District<br>No. 3-20-0277 |
| Filed<br>Rehearing denied | August 19, 2021<br>September 8, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 15-L-101; the Hon. Michael D. Risinger, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Christopher H. Sokn, of Kingery Durree Wakeman & O'Donnell Associates, of Peoria, for appellant.<br><br>Nicholas J. Bertschy, Robert R. Tenney, of Heyl, Royster, Voelker & Allen, P.C., of Peoria, and Christopher J. Drinkwine, of Heyl, Royster, Voelker & Allen, P.C., of Rockford, for appellee. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion.<br>Justices Holdridge and O'Brien concurred in the judgment and opinion. |

## OPINION

¶ 1 Plaintiff is the general manager of Providence Ag. In that capacity, plaintiff hired defendant, an independent contractor, to recalibrate and recertify several scales, including a truck scale, located on Providence Ag's premises. Once on the premises, defendant's employees uncovered a manhole to gain access to the truck scale's underground mechanisms. Defendant's employees did not place warning cones, signs, or barricades around the open manhole. Plaintiff suffered physical injuries after stepping into the open manhole. Plaintiff filed a lawsuit based in negligence against defendant. The circuit court granted summary judgment for defendant after finding it did not owe plaintiff a duty of care as a matter of law. Plaintiff appeals. We reverse.

## I. BACKGROUND

¶ 2

¶ 3 Plaintiff, Rodrick S. Studer, is the general manager of Providence Ag in Roanoke, Illinois. Providence Ag is a supplier of agricultural products. Providence Ag's premises contain four scales, including a truck scale for weighing fertilizer. Around December 2014, the truck scale and two other scales were "red tagged" by the State for a recalibration and recertification.

¶ 4 Before his employment as the general manager at Providence Ag, plaintiff owned and operated a similar business on the same premises. As of December 3, 2014, plaintiff had approximately 40 years of experience working on the premises. Consistent with past practices, plaintiff hired defendant, Central Illinois Scale Company, to recalibrate and recertify the scales on the premises. Defendant serviced the truck scale around five to six times in the past.

¶ 5 To reach the truck scale's underground mechanisms, servicers must uncover and descend into the truck scale's multiple manholes. The manhole at issue in this appeal is 4 to 4½ feet deep and is built into a sidewalk near the main entrance and exit to Providence Ag's business office. The pictures below depict the location of this manhole.



Manhole



Manhole

¶ 6        On December 3, 2014, defendant's employees arrived on the business premises of Providence Ag for the purpose of servicing three of Providence Ag's four scales, including the truck scale. It is undisputed that the above-depicted manhole was covered when defendant's employees arrived on the premises. However, without notice to plaintiff or Providence Ag's employees, defendant's employees removed the cover to that manhole. After leaving the manhole unmarked and unattended, defendant's employees continued their work.

¶ 7        Further, it is undisputed that shortly before plaintiff stepped into the open manhole, defendant's employee, Tim Duncan, entered Providence Ag's business office in order to monitor scale readings displayed in a scale room. While Duncan was in the foyer of the business office, plaintiff briefly greeted Duncan. Immediately thereafter, plaintiff walked outside the business office, together with a business associate, Jonathan Hubble.

¶ 8        After exiting the business office, plaintiff observed another employee of defendant, Robert Bort, standing outside of the business office on the physical surface of the truck scale. Bort was operating a gas-powered weight cart. Since Bort was looking at plaintiff, plaintiff waved "hello" to Bort. Simultaneously, as plaintiff rounded the corner to the business office, while walking along the sidewalk, plaintiff stepped into the open manhole. Plaintiff suffered physical injuries, including a broken foot and a strained back.

¶ 9        According to plaintiff, he walked over the covered manhole approximately 300,000 times during his 40-year history on the premises. However, plaintiff only observed the manhole without a cover on approximately 20 occasions during that time. Plaintiff believed he had the opportunity to enter the manhole 6 to 12 times for cleaning and maintenance of the truck scale during those four decades. The last time plaintiff witnessed the manhole without a cover was in 2011 or 2012.

¶ 10       On August 5, 2015, plaintiff filed an amended complaint, alleging, on the date of the accident, he was not aware that defendant's employees had begun the process of servicing the truck scale or that defendant's employees had removed the cover to the manhole just outside the business office. Plaintiff also alleged defendant's employees negligently failed to place cones, signs, or barricades around the open manhole for purposes of warning persons on the premises of that danger. Likewise, the amended complaint alleged defendant's employees failed to close off Providence Ag's main entrance and exit door, located near the open manhole. These omissions by defendant's employees allegedly violated established safety standards for servicing truck scales.[1]

¶ 11       On August 21, 2015, defendant answered plaintiff's amended complaint, admitting its employees uncovered the manhole. However, defendant denied owing plaintiff a duty of care while its employees were present on Providence Ag's premises. Nearly two years later, on February 14, 2017, defendant alternatively asserted an affirmative defense of comparative negligence, alleging, *inter alia*, plaintiff negligently failed to avoid the danger presented to him by the open manhole.

¶ 12                              A. Motions for Summary Judgment

¶ 13       On May 8, 2020, defendant filed two separate motions for summary judgment. The motions were based on defendant's status as an independent contractor and the open and

---

[1]Plaintiff later sought leave to file a second amended complaint. However, the circuit court granted summary judgment for defendant before allowing plaintiff to file his second amended complaint.

obvious danger rule. In response, plaintiff asserted, as a matter of law, an independent contractor hired to perform work on an owner or possessor's premises may be liable in negligence for creating dangerous conditions on that premises. Further, even if the manhole was open and obvious, plaintiff argued it was reasonably foreseeable that someone would be injured by the open manhole or become distracted by noticing Bort and the noise from the gas-powered weight cart.

¶ 14                     B. Judgment of the Circuit Court

¶ 15    On July 2, 2020, the circuit court held a hearing on defendant's motions for summary judgment and later announced its ruling for defendant on July 6, 2020. The circuit court found there was no genuine issue of material fact because there was "just no discrepancy of the facts." The circuit court then found, despite the fact that defendant "was the possessor of the [truck] scale," an independent contractor, like defendant, did not owe plaintiff a duty of care. The circuit court noted, while defendant's employees possessed or controlled "the immediate area" where they were working, they did not possess or control the entire premises for purposes of premises liability. The circuit court found no exceptions applied to impose a duty of care on defendant.

¶ 16    Plaintiff filed a timely notice of appeal on July 24, 2020.

¶ 17                            II. ANALYSIS

¶ 18    Plaintiff filed an action against defendant, alleging defendant's employees negligently created and then failed to safeguard against a dangerous condition on Providence Ag's premises, causing plaintiff to suffer physical injuries. The circuit court concluded, as a matter of law, an independent contractor cannot be subjected to liability, based in negligence, for physical injuries sustained on premises the independent contractor neither owned nor entirely possessed and/or controlled. The circuit court granted defendant's motion for summary judgment. On appeal, plaintiff challenges the circuit court's ruling as contrary to well-established precedent. Consequently, plaintiff requests for our court to reverse the judgment of the circuit court.

¶ 19    For purposes of this appeal, the parties agree the material facts are undisputed. Plaintiff, as the general manager of Providence Ag, hired defendant to recalibrate and recertify a truck scale located on Providence Ag's premises. Defendant's employees arrived on the premises and, in order to gain access to the truck scale's underground mechanisms, removed the cover to a truck scale manhole. The manhole was located in a sidewalk leading to and from the main entrance and exit to Providence Ag's business office. After exiting the business office, plaintiff stepped into the open manhole, which was not marked with safety devices or guarded by an attendant.

¶ 20    Under the Code of Civil Procedure, summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). Summary judgment is a drastic measure that is proper only if the movant's right is clear and free from doubt. *Seymour v. Collins*, 2015 IL 118432, ¶ 42. The circuit court must construe the record strictly against the movant and liberally for the nonmovant. *Id.* Our review on appeal is *de novo*. *Id.*

- 4 -

## A. Sections 383 and 384 of the Restatement (Second) of Torts

First, we note that the circuit court's ruling is contrary to the Restatement (Second) of Torts. Section 383 clearly states:

> "One who does an act or carries on an activity upon land *on behalf of the possessor* is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land *as though he were the possessor of the land*." (Emphases added.) Restatement (Second) of Torts § 383 (1965).

According to the comments to section 383, persons acting "on behalf of the possessor" include persons "acting" as independent contractors "not only for the purposes of the possessor but also by his direction or consent and therefore by his authority." *Id.* § 383 cmt. a. As such, the independent contractor must account for the likelihood that persons invited or permitted to come onto the land will do so. *Id.* § 383 cmt. b. In the area where the independent contractor is acting "on behalf of the possessor," the independent contractor must "conduct his activities with reasonable care not to injure such licensees." *Id.* (citing *id.* § 341). This duty of care is not restricted to persons whom the independent contractor knows the possessor invited or permitted onto the premises. *Id.* Rather, the duty of care extends to those persons the possessor, without the independent contractor's knowledge, invites or permits onto the land. *Id.*

Similarly, the circuit court's ruling is contradicted by section 384 of the Restatement, which provides:

> "One who on behalf of the possessor of land erects a structure or *creates any other condition on the land* is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition *while the work is in his charge*." (Emphases added.) *Id.* § 384.

According to the comments to section 384, section 384 applies to independent contractors who "create[ ] any *** artificial condition" on the premises or who "alter[ ] [the land's] physical condition on behalf of its possessor." *Id.* § 384 cmts. a, c. Further, section 384 determines the liability of an independent contractor causing bodily harm "while he remains in charge and control of the erection or creation" of the condition. *Id.* § 384 cmt. g. The independent contractor is "put in exclusive charge of *a part of the land* for the purposes of accomplishing the possessor's will," so the independent contractor must warn licensees of dangerous conditions for which he or she, but perhaps not the licensee, has knowledge. (Emphasis added.) *Id.* § 384 cmt. h. But see Restatement (Second) of Torts § 387 cmt. a (1965) (section of the Restatement that, unlike sections 383 and 384, contemplates an independent contractor with "the entire charge of the land," who is undertaking work beyond specific repairs or inspections).

Long ago, after relying on sections 383 to 387 of the Restatement (Second) of Torts, our supreme court held a party who creates a dangerous condition on premises, or who controls premises containing a dangerous condition, on behalf of the owner or possessor is subject to the same liability for injuries resulting from the dangerous condition as the owner or possessor. See *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 324 (1978) (citing *Kahn v. James Burton Co.*, 5 Ill. 2d 614, 620 (1955), and Restatement (Second) of Torts §§ 383-387 (1965)). Indeed, our supreme court unequivocally stated: "It is firmly established in Illinois that a party that creates a dangerous condition will not be relieved of liability because that party does not own

or possess the premises upon which the dangerous condition exists." *Id.* (citing *Kahn*, 5 Ill. 2d at 620, and *Stedwell v. City of Chicago*, 297 Ill. 486, 489-90 (1921)).

¶ 25 Based on this longstanding precedent and the unique facts of record, we conclude defendant's employees created a dangerous condition on Providence Ag's premises by removing the cover to the manhole. Therefore, it is inconsequential that defendant's employees did not entirely possess or control Providence Ag's premises. It was sufficient that defendant's employees, while possessing or controlling the immediate area around the truck scale on behalf of plaintiff and/or Providence Ag, created a potentially dangerous condition by altering the physical nature of the sidewalk and the manhole contained on those premises. See *id.*; Restatement (Second) of Torts §§ 383, 384 cmts. c, g, h (1965); see also *Madden v. F.H. Paschen/S.N. Nielson, Inc.*, 395 Ill. App. 3d 362, 378 (2009); *Randich v. Pirtano Construction Co.*, 346 Ill. App. 3d 414, 424 (2003). Again, we emphasize that defendant's employees chose to exercise possession or control over the immediate area, near the truck scale's manhole, by taking on the responsibility of uncovering that manhole. By doing so, for purposes of the specialized work fully in their charge, defendant's employees altered the physical condition of the premises without notice to plaintiff or Providence Ag's employees. See Restatement (Second) of Torts § 384 cmts. g, h (1965).

¶ 26 Therefore, with respect to the dangerous condition created by defendant, an independent contractor, we conclude that defendant is not immune from liability for plaintiff's injuries simply because its employees possessed or controlled only a portion of Providence Ag's premises. Consequently, the circuit court erroneously granted summary judgment for defendant on the ground that defendant cannot be liable to plaintiff under these circumstances.

¶ 27                              B. Duty of Care Factors

¶ 28 Our supreme court has noted the Restatement speaks to the "general question of liability" and not "specifically to the existence of a duty [of care]" to the plaintiff. See *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 151 (1990). Therefore, while longstanding supreme court precedent and sections 383 and 384 of the Restatement support the general proposition that an independent contractor, such as defendant, may be liable for plaintiff's physical injuries under the right set of circumstances, our next task is to decide whether the undisputed facts of record create a duty of care that must be placed on defendant for the benefit of plaintiff. See *id.*

¶ 29 Whether a duty of care exists with respect to defendant presents a question of law, shaped by public policy, to be decided by the court. *Id.* at 140; accord *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 13; see also *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 388 (1998). The duty of care factors include (1) the reasonable foreseeability of injury, (2) likelihood of injury, (3) burden of guarding against the injury, and (4) consequences of placing the burden of guarding against the injury on the defendant. *Ward*, 136 Ill. 2d at 140-41, 151; accord *LaFever*, 185 Ill. 2d at 389; *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 438 (1990); *Bruns*, 2014 IL 116998, ¶ 14. The weight given to each duty of care factor depends upon the circumstances of the case. *Bruns*, 2014 IL 116998, ¶ 14. For a complete analysis, we examine the duty of care factors in light of the undisputed facts on appeal.

¶ 30           1. Reasonable Foreseeability and Likelihood of Injury to Plaintiff

¶ 31 Initially, we focus on the undisputed fact that defendant's employees independently removed the cover to the manhole without first seeking the approval or permission of plaintiff

or other Providence Ag employees. Based on this undisputed fact, it is an inescapable conclusion that defendant's employees not only exerted control over a portion of Providence Ag's premises but also altered the physical condition of the sidewalk near the business office.

¶ 32    By uncovering the manhole in the center of the sidewalk, defendant's employees were responsible for creating a dangerous condition for all pedestrians traversing that portion of the walkway. In other words, the sidewalk, with the manhole cover in place, was not a dangerous condition that existed on the premises before defendant's employees' actions. Instead of ensuring plaintiff or Providence Ag had an opportunity to safely reroute pedestrians away from the small segment of the sidewalk, defendant's employees took it upon themselves to act on behalf of Providence Ag by removing the cover to the manhole without placing safety devices or an attendant around that dangerous condition. See *Henderson v. Lofts at Lake Arlington Towne Condominium Ass'n*, 2018 IL App (1st) 162744, ¶ 56 (finding "as the defendants carried out the work, they were in the best position to identify and guard against any hazardous condition resulting from that work").

¶ 33    Further, it is undisputed that defendant's employees, at the very least, deviated from a prior practice of utilizing safety devices, namely, safety cones, while performing services on the premises. In fact, defendant's own internal safety manual, as well as other established safety regulations and industry standards, suggest such simple safety precautions are customary. Obviously, the mere existence of these documented safety practices and resource materials constitutes both strong and compelling evidence of the foreseeability of plaintiff's injury.[2] This is especially true because the manhole was located on a sidewalk leading to and from the main entrance and exit to Providence Ag's business office. For persons like plaintiff, who might be exiting Providence Ag's business office, the open 4 to 4½ foot deep manhole was located in the center of the sidewalk, just a few feet around the corner of that building.

¶ 34    Based on these undisputed facts, we conclude plaintiff's injury was both reasonably foreseeable and extremely likely. See *Ward*, 136 Ill. 2d at 153-54 (despite reasonable care, momentary forgetfulness, or previous encounters by customers, it was reasonably foreseeable to the defendant that a customer carrying a large item would collide with a post "located immediately outside" the exit of the defendant's store).

¶ 35                2. Burden of Guarding Against Plaintiff's Injury
                  and the Consequences of Placing That Burden on Defendant

¶ 36    Next, we consider whether it would have been relatively easy and inexpensive for defendant's employees to guard against plaintiff's injury after removing the cover to the manhole on the premises. While servicing the truck scale, defendant's employees could have easily placed cones, signs, barricades, or an attendant around the small area near the open manhole.

¶ 37    Notably, the location of the potentially dangerous condition was confined to a very small area—the width of the sidewalk surrounding the open manhole. Therefore, the burden of

---

[2]We agree with defendant that safety regulations, industry standards, and defendant's own internal safety manual, by themselves, do not impose a duty of care where one does not otherwise exist as a matter of law. See *Calderon v. Residential Homes of America, Inc.*, 381 Ill. App. 3d 333, 343 (2008); *Recio v. GR-MHA Corp.*, 366 Ill. App. 3d 48, 57-58 (2006). However, we conclude the existence of such guidelines may inform the duty of care analysis.

guarding against plaintiff's injury, by warning of or restricting access to that small area, and the consequences of placing that burden on defendant were virtually nonexistent. The fact that defendant's employees have taken similar precautionary actions on other worksites constitutes persuasive evidence that such precautions are not overly burdensome for defendant. A simple orange safety cone could have sufficed to place pedestrians on notice of the dangerous condition of the open manhole. See *id.* at 154, 156 (burden of protecting against the danger of a post "located immediately outside" the defendant's store was slight, as a "simple warning" might have sufficed); *Henderson*, 2018 IL App (1st) 162744, ¶ 56 (the defendant "undertook the work" causing the dangerous condition, so the burden of guarding against injuries from that dangerous condition was not "too great").

¶ 38    Having carefully applied the undisputed facts to the four traditional duty of care factors, we conclude, as a matter of law, defendant owed plaintiff a duty of care in this case.

¶ 39                              C. Open and Obvious Danger Rule

¶ 40    Next, we address the open and obvious danger rule. If the manhole created an open and obvious danger that went unnoticed by plaintiff, then it would be possible for this court to affirm the trial court's decision to grant summary judgment for defendant. Initially, having determined that defendant is subject to the same degree of liability as the owner or possessor of the premises, we recognize that defendant similarly enjoys "the same freedom from liability" as the owner or possessor of the premises. Restatement (Second) of Torts §§ 383-384 (1965). Thus, defendant may invoke and potentially benefit from an application of the open and obvious danger rule.

¶ 41    The open and obvious danger rule does not automatically bar the imposition of a duty of care against a defendant but instead affects the first two factors in the traditional duty of care analysis, namely, the reasonable foreseeability and likelihood of an injury to the plaintiff. *Bruns*, 2014 IL 116998, ¶ 19; see also *Ward*, 136 Ill. 2d at 147-148. If the open and obvious danger rule applies, then those two factors will be considered slight and weigh against imposing a duty of care. *Bruns*, 2014 IL 116998, ¶ 19 (citing *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 456-57 (1996)); accord *Alqadhi v. Standard Parking, Inc.*, 405 Ill. App. 3d 14, 17 (2010).

¶ 42    Under the rule, " 'a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious.' " *Bruns*, 2014 IL 116998, ¶ 16 (quoting *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 44 (2003)). The rule derives from section 343A of the Restatement, stating a "possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1) (1965); *Deibert*, 141 Ill. 2d at 434-35. " 'Obvious' " means " 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.' " *Bruns*, 2014 IL 116998, ¶ 16 (quoting Restatement (Second) of Torts § 343A cmt. b (1965)). In other words, "[t]he open and obvious nature of the condition itself gives caution." *Bucheleres*, 171 Ill. 2d at 448. If the physical nature of the potentially dangerous condition is undisputed, then a question of law exists for the court. *Bruns*, 2014 IL 116998, ¶ 18; *Alqadhi*, 405 Ill. App. 3d at 17; *Wilfong v. L.J. Dodd Construction*, 401 Ill. App. 3d 1044, 1053 (2010).

¶ 43        Based on our careful review of this record, we conclude the manhole, uncovered by defendant's employees, was not immediately visible to persons taking the first few steps upon the sidewalk while walking away from Providence Ag's business office. It is very foreseeable that any reasonable person could have safely walked over the covered manhole *en route* to the business office, entered and conducted his or her business in the office, and then, within a relatively short period of time, departed from the business office by retracing his or her steps on the same sidewalk. Under this foreseeable set of circumstances, pedestrians conducting business in the business office would not have a reason to anticipate encountering a newly created danger, located in the center of the sidewalk recently traversed without risk of danger or incident. Such a person, like plaintiff, would have had little time to perceive and then react to the open manhole, located at the beginning of the walkway leading away from the business office.

¶ 44        Again, after carefully considering the undisputed but unique facts contained in this record, we conclude the uncovered manhole was not an open and obvious danger that weighs against imposing a duty of care on defendant for the benefit of plaintiff. See *Bruns*, 2014 IL 116998, ¶ 19 (citing *Bucheleres*, 171 Ill. 2d at 456-57); accord *Alqadhi*, 405 Ill. App. 3d at 17. Stated differently, defendant's employees should have anticipated the foreseeable risk and likelihood of harm to a pedestrian, such as plaintiff, after the removal of the manhole cover. By virtue of this holding, we need not consider the distraction exception to the open and obvious danger rule.

¶ 45                    D. Sections 404 and 413 of the Restatement (Second) of Torts

¶ 46        As an aside, we note that defendant invokes sections 404 and 413 of the Restatement in support of the argument that defendant did not owe plaintiff a duty of care. See Restatement (Second) of Torts §§ 404, 413 (1965). Section 404 pertains to negligence in the making, rebuilding, or repairing of a chattel. See *id.* § 404. Obviously, the present appeal does not involve an independent contractor who built or repaired a chattel. Therefore, section 404 is inapplicable.

¶ 47        Similarly, at a minimum, section 413, relating to the duty of an employer to provide for the taking of precautions against dangers involved in work entrusted to an independent contractor, invokes plaintiff's comparative negligence. See *id.* § 413. Comparative negligence is an issue for the trier of fact and is currently beyond the scope of this appeal. *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 62-63 (1999). In other words, section 413 cannot negate a duty of care otherwise owed by defendant. See *Deibert*, 141 Ill. 2d at 447 ("[p]laintiff's own comparative negligence did not negate defendant's duty, rather it reduced the amount of plaintiff's recovery").[3] However, it is unclear how plaintiff could provide for the taking of

_____

[3]We point out, however, section 413 "is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work." Restatement (Second) of Torts § 413 cmt. b (1965). These routine precautions "are the responsibility of the [independent] contractor; and if the employer has exercised reasonable care to employ a contractor who is competent and careful [citation], he is not required to provide, in the contract or otherwise, that the contractor shall take them." *Id.* Instead, section 413 concerns "special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would

special precautions if, as is undisputed on appeal, plaintiff was not informed that defendant's employees began their work on the truck scale or uncovered the manhole.

¶ 48                              III. CONCLUSION

¶ 49        In sum, the trial court erred by finding, as a matter of law, defendant could not be liable for creating a dangerous condition on Providence Ag's premises while possessing or controlling only a limited portion of that premises. Further, based on the traditional duty of care factors, the trial court erred by finding defendant did not owe plaintiff a duty of care. Finally, the open and obvious danger rule does not apply to weigh against imposing a duty of care on defendant. For these reasons, the judgment of the circuit court of Peoria County is reversed.

¶ 50        Reversed.

---

recognize the necessity of taking special precautions." *Id.* The situation is one where "a risk is created which is not a normal, routine matter of customary human activity, such as driving an automobile, but is rather a special danger to those in the vicinity, arising out of the particular situation created, and calling for special precautions." *Id.* " 'Peculiar' " means a special or recognizable danger "arising out of the work itself." *Id.*; see also *Apostal v. Oliveri Construction Co.*, 287 Ill. App. 3d 675, 681 (1997) (First District describing the work with which section 413 is concerned as "dangerous or inherently dangerous").